UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLYDE TAYLOR,

          Petitioner,          Civil No. 05-10102
                                      Honorable David M. Lawson
v.

PAUL RENICO,

          Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, Clyde Taylor, presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for first-degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. The respondent filed a response to the petition on October 17, 2005 contending that the petitioner's claims are either procedurally defaulted or lack merit. The Court finds no need to address the procedural default defense because it finds no merit in the petitioner's claims. Therefore, the Court will deny the petition.

I.

      The petitioner was charged with first-degree murder and felony firearm after he and Alrelio Evans shot and killed nineteen-year-old Donnie McCorkle on June 20, 2000 in the City of Detroit, Michigan. The petitioner was tried jointly with Evans before separate juries in the Wayne County, Michigan circuit court, and they were found guilty as charged.

      At trial, Crystal Troy testified that she drove Donnie McCorkle to his home on Northlawn Street during the early morning hours of June 20, 2000. She and McCorkle sat in the vehicle talking

until approximately 2:00 a.m. They exited the vehicle and were standing outside when a Ford Expedition pulled up. McCorkle began walking toward the truck. She observed the driver of the truck reach his arm across the passenger seat and fire a gun. When she heard the gunshot, she dropped to the ground. The truck then sped away.

A Ford Expedition matching the description of the assailant's vehicle was located some time later. The registered owners of the Expedition were co-defendant Evans's parents, and they had reported the vehicle as stolen the day before the shooting.

Police officer Edward Williams, the officer in charge of the investigation, testified that several other individuals had been considered suspects before charges were finally brought against the petitioner and Evans. Officer Williams testified that he learned from the petitioner's girlfriend, Lynee Griggs (a neighbor of Mr. McCorkle's), that she and Mr. McCorkle had argued after a guest of Ms. Griggs drove over Mr. McCorkle's front lawn. Officer Williams testified that the petitioner was later arrested and gave a statement in which he admitted that Ms. Griggs told him about her dispute with Mr. McCorkle and asked him to get his "team" to kill Mr. McCorkle. According to Williams, the petitioner admitted that he then contacted Evans and said he "had a mission for him." Tr., May 1, 2001, p. 129. The petitioner said to officer Williams that at approximately 1:00 a.m. on June 20, 2000, the petitioner, Evans, and the petitioner's cousin, Richard Brooks, drove over to Mr. McCorkle's home. McCorkle was standing outside. The petitioner, who was driving, stopped the truck, and Evans shot Mr. McCorkle through the rolled-down window.

Richard Brooks testified that on the night of the shooting, the petitioner and Evans picked him up from his home in a green Ford Expedition. Brooks got into the back seat of the vehicle, and Evans drove the vehicle to Mr. McCorkle's home. McCorkle was outside the home, but Evans

drove away, and then he and the petitioner switched seats. The petitioner drove back to McCorkle's home, where Evans lowered the window, and fired shots at Mr. McCorkle. The petitioner then drove away.

The jury convicted the petitioner of first-degree murder and felony firearm. He was sentenced to life imprisonment for the murder conviction and a consecutive term of two-years imprisonment for the felony firearm conviction.

The petitioner appealed his conviction in the Michigan Court of Appeals, presenting the following claims:

I.  The trial court erred in admitting hearsay to suggest the motive for the crime.

II.  Prosecutorial misconduct denied [the petitioner's] right to a fair trial.

    a.  The prosecutor argued that there was no evidence that [the petitioner] had been coerced into waiving his rights and making a statement. This improperly infringed on [the petitioner's] Fifth Amendment rights.

    b.  The prosecutor improperly injected his opinions and argued facts beyond the record, based on his personal knowledge.

    c.  The prosecutor prejudicially disparaged defense counsel.

    d.  The prosecutor improperly appealed to the jurors to sympathize with the decedent and his family.

III.  Ineffective assistance of counsel denied [the petitioner] a fair trial.

    a.  Trial counsel failed to move to suppress Richard Brooks's statement as a coerced and involuntary statement, the admission of which violated [the petitioner's] right to due process.

    b.  The police's failure to electronically record [the petitioner's] statement denied due process of law. Trial counsel ineffectively failed to move to suppress [the petitioner's] statements on this ground.

        c.      Trial counsel failed to object to prejudicial hearsay.

        d.      Trial counsel ineffectively failed to object to police-opinion testimony on guilt and elimination of other suspects.

        e.      Trial counsel ineffectively failed to raise at trial issues II, IV, and V, as set forth in this brief.

IV.     The trial court reversibly erred in instructing the jury on reasonable doubt.

V.     The cumulative effect of the error requires that [the petitioner] be granted a new trial.

VI.     [The petitioner's] mandatory life sentence is a "determinate sentence" which the legislature has no power to prescribe under Const 1963, Art 4, § 45.

Br. on Appeal at viii-ix. The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Evans*, 2003 WL 2224164 (Mich. Ct. App. Sept. 30, 2003).

The petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the first five claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Taylor*, 469 Mich. 1027, 679 N.W.2d 63 (March 30, 2004) (Table).

The petitioner then filed the present petition for a writ of habeas corpus. He raises the same claims presented to the Michigan Supreme Court, with the exception of claim III.b. (relating to the police's failure to record his statement), which is not raised here.

The respondent has filed an answer to the petition arguing that the petitioner's claims are barred from review in this Court because they are procedurally defaulted or otherwise not cognizable on habeas review. In the alternative, the respondent contends that the petitioner's claims lack merit.

-4-

## II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court
> concludes in its independent judgment that the relevant state-court decision applied
> clearly established federal law erroneously or incorrectly. Rather, that application
> must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*,

475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison*

*v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first claims that the trial court erred in admitting certain testimony by Officer Edward Williams concerning a statement made by Lynee Griggs. He contends that the testimony amounted to hearsay and was used to establish the motive for the shooting. Officer Williams testified that Lynee Griggs was the petitioner's girlfriend, and she was originally charged in McCorkle's death. On redirect examination, the prosecutor asked Williams whether Ms. Griggs had a dispute with Mr. McCorkle, and, if so, what was the nature of that dispute. Defense counsel objected on hearsay grounds. The trial court overruled the objection and allowed the testimony so that Officer Williams could "explain his actions," presumably giving him an opportunity to explain why Ms. Griggs ultimately was not prosecuted. Officer Williams testified that Ms. Griggs told him that she had an argument with Mr. McCorkle about some visitors to her house driving over his front lawn. Ms. Griggs told Officer Williams that "words were exchanged and threats were made." Tr., May 1, 2001, p. 91.

The Michigan Court of Appeals held that the trial court did not err in admitting this testimony because it was not hearsay. That court reasoned that the purpose of the testimony was not to prove the substance of what Griggs has said to Williams; instead it was offered to explain Officer Williams's reason for investigating certain individuals for their potential involvement in the killing. This testimony was elicited on redirect examination in response to defense counsel's questions about other individuals investigated in connection with the killing, apparently rendering Williams's state of mind relevant.

The petitioner's claim of evidentiary error under state evidence law is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus review does not lie for errors of state law.") (internal quotation omitted). Federal courts on habeas review may not review a state court decision on purely state law issues. *Long v. Smith*, 663 F.2d 18, 22-23 (6th Cir. 1981).

However, this Court will review state-court evidentiary rulings that "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). The fundamental principle of justice most directly at issue here is the right of confrontation found in the Sixth Amendment to the United States Constitution.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Amendment applies to state court proceedings, *Pointer v. Texas*, 380 U.S. 400, 403 (1965), and it "provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion). The Confrontation Clause is not violated when the out-of-court declarant testifies at trial and is available for cross-examination. *Nelson v. O'Neil*, 402 U.S. 622, 626-27 (1971); *California v. Green*, 399 U.S. 149, 158, 162 (1970). Likewise, the Confrontation Clause is not offended when an out-of-court statement is admitted for a non-hearsay purpose, i.e., to prove something other the truth of what the declarant asserted, or when the relevance of the statement is not dependent on the credibility of the declarant. *United States v. Pugh*, 405 F.3d 390,

399 (6th Cir. 2005) ("The admission of a testimonial statement in and of itself is not enough to trigger a violation of the Confrontation Clause. Instead, the statement must be used as hearsay – in other words, it must be offered for the truth of the matter asserted."); *United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004) ("Because the statements were not offered to prove the truth of the matter asserted, the Confrontation Clause does not apply."); *see also Tennessee v. Street*, 471 U.S. 409, 414 (1985). Although the interpretation of the Confrontation Clause has undergone a radical transformation in recent years, *see Crawford v. Washington*, 541 U.S. 36 (2004), that latter point has remained constant. *Crawford*, 541 U.S. at 59 n.9 (explaining that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted" (citing *Street*, 471 U.S. at 414)). The state court of appeals concluded that Williams's testimony relaying the incident described by Griggs was not offered for a hearsay purpose, and this Court has no reason to second guess that conclusion. The petitioner has not established a violation of his rights under the Confrontation Clause.

The petitioner also contends that Williams's testimony was so prejudicial as to infringe his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. That Clause is offended only when errors in the admission of evidence "so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). The petitioner has not shown that admitting this testimony deprived him of a fundamentally fair trial. Evidence regarding the confrontation between Mr. McCorkle and Ms. Griggs was presented through several other witnesses. Robbie McCorkle testified that he observed a heated argument between McCorkle and Griggs regarding Griggs's friend driving over McCorkle's lawn. In his own statement to police, the petitioner also discussed the disagreement.

Permitting Officer Williams to testify as to Ms. Griggs's statement regarding the disagreement was not so fundamentally unfair that it rose to the level of a deprivation of due process. This claim does not entitle the petitioner to habeas relief.

B.

In his second claim, the petitioner argues that he is entitled to habeas corpus relief based upon multiple instances of prosecutorial misconduct because the prosecutor: (1) improperly commented on the petitioner's failure to testify; (2) injected his opinions and argued facts beyond the record; (3) disparaged defense counsel; and (4) appealed to the jurors' sympathy.

The respondent contends that the petitioner's prosecutorial misconduct claims are procedurally defaulted because his attorney failed to object to the prosecutor's conduct at trial and the Michigan Court of Appeals relied on counsel's failure to object to determine that the claims were not preserved for appellate review.

The Supreme Court has described doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

Although the procedural default doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-and-prejudice test, the doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005). Therefore, although the Court would ordinarily resolve the procedural default issue first, "judicial economy sometimes dictates reaching the merits [of a claim] if the merits are easily resolvable against a petitioner while

-10-

the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."). The Court deems it more efficient in this case to proceed directly to the merits of the petitioner's claims.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982). "The Court must examine 'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).


First, the petitioner claims that the prosecutor improperly commented on his failure to testify when, in his rebuttal closing argument, the prosecutor stated that no evidence was presented to show that the petitioner's statement to police was coerced. "It is well established that a prosecutor's direct reference to a criminal defendant's failure to testify is a violation of that defendant's Fifth Amendment privilege against compelled self-incrimination." *Byrd v. Collins*, 209 F.3d 486, 533 (6th Cir. 2000) (citing *Griffin v. California*, 380 U.S. 609 (1965)). Indirect references to a defendant's failure to testify may also violate the Fifth Amendment privilege. *Ibid.* "'[A] reviewing court must look at all the surrounding circumstances in determining whether or not there has been a constitutional violation.'" *Ibid.* (quoting *Butler v. Rose*, 686 F.2d 1163, 1170 (6th Cir. 1982) (en banc)). In this case, the prosecutor did neither.

The petitioner objects to the following remarks offered by the prosecutor in his rebuttal:

> [W]here is the evidence that Mr. Taylor was coerced into making a lying, false statement? Where is that evidence? Nobody stood up on this stand and said Mr. Taylor was beaten. Deprived of his food. Deprived of anything. Nobody sat up on that stand and said that he asked for an attorney and that he didn't get it. Nobody sat up on that stand and said that they wouldn't let him sleep, or whatever. We do not have any evidence to the contrary in this case that says that Mr. Taylor waived his rights and made a statement as to what happened on that day. If you want to challenge that statement, fine. Challenge it. But say where is the evidence that he, Mr. Taylor, was coerced into making a false, lying, made-up statement? Where is it?

Tr., May, 4, 2001, pp. 24-25.

The prosecutor's argument, read in isolation, might suggest that it was the petitioner who should have testified to furnish the absent evidence. However, the rebuttal argument was in response to defense counsel's closing argument in which he repeatedly argued that the petitioner's inculpatory statement to police was coerced. Thus, the prosecutor's argument, which did not directly comment upon the petitioner's failure to testify, was a response to defense counsel's argument that the record revealed no such evidence. The prosecutor's argument can be viewed as a comment on the testimony of the police officer who elicited the petitioner's statement. The prosecutor reasonably may have been highlighting for the jury that Officer Williams testified that the petitioner was not under duress or under the influence of drugs when he gave his statement. The Court concludes that the prosecutor's comments were not improper and did not "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

Next, the petitioner argues that the prosecutor improperly injected his opinions and argued facts beyond the record when, in closing argument, he stated that witness Rico Hence failed to appear to testify as scheduled and had to be threatened with a bench warrant in order to prompt his

appearance. The prosecutor's comments improperly referenced facts not submitted at trial. However, the Court must consider whether the prosecutor's comments rendered the "resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation marks omitted). The fairness of the trial may be measured by considering, *inter alia*, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused. *See id.* at 181-82.

In the present case, all three of these factors suggest the prosecutor's comments did not amount to a denial of due process. The prosecutor's comments did not manipulate or misstate the evidence, the trial judge instructed the jury that the attorneys' statements were not evidence, and the weight of the evidence against the petitioner was such that the prosecutor's remarks would not unfairly influence the jury. The Court therefore concludes that the prosecutor's comments did not result in a denial of due process.

Next, the petitioner alleges the prosecutor disparaged defense counsel by stating that defense lawyers sometimes try to confuse juries, that defense counsel took a "simplistic" view of the case, and that defense attorneys try to minimize the statements of people who just narrowly escaped death. It is clear from the record that the prosecutor was referring to defense lawyers when he stated that the "concepts that they talk about . . . this reasonable doubt thing . . . I think try to confuse the jury." Tr., May, 4, 2001, p. 18. Viewed in context, however, it appears the prosecutor was merely trying to add his own gloss to the meaning of the reasonable doubt standard; he followed up this allegedly improper comment by imploring the jury to not examine things in isolation but to "[l]ook at all of the evidence." *Ibid.* It is not improper for a prosecutor to impress upon the jury the need to consider the totality of the evidence. Although the Court disapproves of categorical statements by prosecutors that defense attorneys sometimes try to mislead jurors, the Court concludes that the

comment in this case did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard*, 445 F.3d at 897 (quoting *Darden*, 477 U.S. at 181). The Court also notes that the prejudice potentially caused by this statement was mitigated when the prosecutor explained that he did not think defense attorneys tried to intentionally mislead jurors. The remaining comments to which the petitioner objects – the prosecutor's characterization of the defense as "simplistic" and his statement that defense attorneys sometimes try to minimize the testimony of adverse witnesses – cannot be taken as disparaging defense counsel. A prosecutor may argue all reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the prosecutor's case. *See United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). The prosecutor's comments were reasonable arguments designed to persuade the jury to accept the prosecutor's theory; they did not improperly disparage defense counsel.

Finally, the petitioner claims that the prosecutor engaged in misconduct in his closing statement when he appealed to the jurors' sympathy for the victim. The petitioner objects to the following passage:

> Donnie McCorkle, a son, a brother, a friend, celebrating his 19th birthday on June 20th of the year 2000. Donnie McCorkle was just beginning his life. Donnie McCorkle was having a pleasant evening that particular day. His life was just getting ready to take off, when in just a split second, he's cut down. In just a split second, right in front of his own home, two bullets go through his body. In just a split second, this promising young man is taken from us.

Tr., May 3, 2001, pp. 36-37.

Although the prosecutor's statements highlighted the youth of the victim and the senselessness of the crime, the prosecutor did not ask the jury to convict on that basis. Viewed in its entirety, the prosecutor's closing argument provided an overview of the evidence presented at trial and asked the jury to convict on *that* basis. The prosecutor's comments did not deprive the

petitioner of a fundamentally fair trial and, therefore, did not violate the petitioner's due process rights.

The petitioner has not shown that the prosecutor engaged in misconduct. Therefore, he is not entitled to a writ of habeas crpus on that ground.

C.

The petitioner next claims that the trial court erred in instructing the jury on reasonable doubt. The trial court gave the following reasonable doubt instruction:

> A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or a flimsy possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that – a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case.

Tr., May 4, 2001, p. 29.

The petitioner argues that the foregoing reasonable doubt instruction was insufficient because it does not include language informing the jury that a reasonable doubt would make a person "hesitate to act" in the most important of his own affairs. The respondent argues that this claim is procedurally defaulted. Once again, because the petitioner's claim lacks merit, the procedural default defense need not detain us here.

An erroneous jury instruction warrants habeas corpus relief only where the "instruction so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973) (internal alterations omitted)). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the

-15-

instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

Where the state has accused an individual of violating its criminal laws and seeks to punish him, "the Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Cage v. Louisiana*, 498 U.S. 39, 39 (1990) (quoting *In re Winship*, 397 U.S. 358, 364 (1970));. *see also Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). "This reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. Among other things, it is a prime instrument for reducing the risk of convictions resting on factual error." *Cage*, 498 U.S. at 39-40 (internal quotation marks and citation omitted).

The Sixth Circuit has held that there are no "magic words" that must be used to define the state's burden of proof. *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). Rather, "[t]he Due Process clause requires only that the instruction not lead the jury to convict on a lesser showing than 'reasonable doubt' and, when taken as a whole, adequately conveys the 'concept' of reasonable doubt." *Ibid.* Therefore, although the Sixth Circuit has approved the "hesitate to act" language, *United States v. Goodlett*, 3 F.3d 976, 979 (6th Cir. 1993), it has declined to hold that inclusion of the "hesitate to act" language in a reasonable doubt instruction is mandatory. *Binder*, 198 F.3d at 179; *Szenay v. Yukins*, 178 F.3d 1296, 1999 WL 187482, at *7 n. 2 (6th Cir. Mar.10, 1999) (Table). In fact, use of this language in reasonable doubt instructions has been criticized. *Victor v. Nebraska*, 511 U.S. 1, 24 (1994) (Ginsburg, J., concurring).

The Court believes that the reasonable doubt instruction given in the petitioner's case did not lessen the State's burden, and, therefore, the instruction as given did not offend the Due Process Clause.

## D.

The petitioner next claims that his trial attorney was ineffective in failing to: (1) move to suppress witness Richard Brooks's custodial statement; (2) object to inadmissible hearsay testimony; and (3) object to police testimony regarding the elimination of other suspects.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

An attorney's performance is deficient if counsel's representation falls below an "objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The petitioner argues that counsel should have moved to suppress a custodial statement Richard Brooks gave to the police because it was the product of police coercion. Co-defendant Evans presented the same claim to the Michigan Court of Appeals. That court, which consolidated the appeals of the petitioner and Evans, denied Evans's claim and denied the petitioner's claim by adopting its reasoning as to Evans's claim. The court of appeals analyzed Evans's claim as follows:

> Defendant Evans also claims that counsel was ineffective for failing to move to suppress Brooks' custodial statements to the police. We find no merit to this claim. First, the record does not indicate that Brooks' custodial statements were offered into evidence. Instead, defense counsel used those statements to cross-examine Brooks in an attempt to impeach his trial testimony. Second, to the extent Evans argues that Brooks' custodial statements were involuntary under the Fifth Amendment, that argument lacks merit. As this Court stated in *People v Jones*, 115 Mich App 543, 547; 321 NW2d 723 (1982), *aff'd* 419 Mich 577, 358 NW2d 837 (1984), "[t]here is no authority to extend the personal right of a defendant against coerced self-incrimination to include statements made by witnesses. In addition, [a] defendant ha[s] no standing to raise the issue of violation of the rights of third parties." Third, although prosecutorial intimidation of witnesses may amount to a denial of a defendant's constitutional right to due process of law, . . . the existing record does not indicate that a motion to suppress Brooks' statements or testimony on this ground would have been successful. At trial, Brooks consistently denied having been coerced or intimidated into making the statements. Although he admitted being told that he would be charged in this matter if he did not give a statement, he also testified that the police told him to tell the truth. The totality of the circumstances, including Brooks' young age, does not suggest that Brooks' statements were unreliable as a matter of law because of egregious police misconduct. *See Douglas v Woodford*, 316 F.3d 1079, 1092 (9th Cir. 2003). Accordingly, counsel's failure to move to suppress either Brooks' statements or his trial testimony did not amount to ineffective assistance of counsel.

*People v. Evans*, 2003 WL 2224164 at *2.

Although the Fifth Amendment right against compelled incrimination is a personal right and may not be asserted on another's behalf, use of another's coerced testimony may violate a defendant's rights under the Due Process Clause. *Bradford v. Johnson*, 476 F.2d 66 (6th Cir. 1973), *aff'g* 354 F. Supp. 1331 (E. D. Mich. 1972); *United States ex rel. Cunningham v. Roberts*, 719 F.2d 892, 896 (7th Cir. 1983). The Eleventh Circuit has held, however, that even where police conduct in questioning a witness is inappropriate, if the conduct is "not so extreme that it violates a sense of fundamental fairness, shocking to universal justice," a defendant's due process rights are not violated where the defendant is able to cross-examine the witness regarding the police contact. *Wilcox v. Ford*, 813 F.2d 1140, 1149 (11th Cir. 1987) (internal quotation omitted). The opportunity for cross examination allows the jury "adequate opportunity to assess the proper weight to be accorded to the challenged evidence." *Ibid.* The Court finds the Eleventh Circuit's reasoning persuasive.

In this case, defense counsel was able to cross-examine Brooks regarding his treatment by police. The jury, therefore, was able to assess his credibility and the potential impact the police conduct may have had on his testimony. In addition, Brooks consistently denied the suggestion that he may have been coerced into giving a statement. The Court finds that the introduction of Brooks's testimony did not violate the petitioner's constitutional rights, and the state court's holding that counsel was not ineffective in failing to object was not contrary to or an unreasonable application of Supreme Court precedent.

The petitioner further argues that his attorney was ineffective in failing to object to the so-called hearsay testimony of Officer Williams, discussed above, regarding a disagreement between the petitioner's girlfriend and the victim about whether a friend of the petitioner's girlfriend had driven over the victim's lawn. The Michigan Court of Appeals held that counsel was not ineffective

-19-

because counsel initially challenged this testimony and the testimony was properly admitted for a non-hearsay purpose. *People v. Evans*, 2003 WL 2224164 at *7,*9. Also, the petitioner argues that counsel should have objected to testimony from Officer Williams regarding other suspects investigated in connection with the crime. The Michigan Court of Appeals held that this was not improper testimony of Officer Williams's personal opinion of guilt, but instead it related to his investigation of the crime. The Court finds that the state court's resolution of these claims was not contrary to or an unreasonable application of Supreme Court precedent.

E.

In his final claim, the petitioner alleges that he was deprived of a fair trial due to cumulative error. The Sixth Circuit has expressed doubt about the validity of such cumulative-error arguments in the post-AEDPA era. *See Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005) ("[P]ost-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief"); *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002) (stating that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief"). Even if such a claim could merit habeas relief, however, the Court finds that, in the aggregate, any errors committed did not infringe the petitioner's right to a fair trial. The petitioner is therefore not entitled to habeas relief on his cumulative-error claim.

III.

The petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 14, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 14, 2008.

s/Felicia M. Moses
FELICIA M. MOSES